## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BENNIE SCHNORR, For Himself and All Others Similarly Situated,<br><br>　　　　　　Plaintiff(s),<br><br>vs.<br><br>MARSHA SCHUBERT, an individual and d/b/a SCHUBERT & ASSOCIATES; RICHARD SCHUBERT, an individual and d/b/a SCHUBERT & ASSOCIATES; AXA ADVISORS, LLC, a Delaware limited liability company; AXA EQUITABLE LIFE INSURANCE COMPANY, a New York corporation, f/k/a THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES; PERSHING, LLC, a Delaware limited liability company; RAYMOND, JAMES & ASSOCIATES, INC., a Florida corporation; and WILBANKS SECURITIES, INC., an Oklahoma corporation,<br><br>　　　　　　Defendants. | Case No. CIV-05-303-M |

## **ORDER**

Pending before the Court are Plaintiff's Motion to Remand and Defendants' Motions to Dismiss for Failure to State a Claim.[1] The dispositive issue underlying all of these motions – whether the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), completely preempts Plaintiff's putative class action – has been fully briefed, and, accordingly, the matter is ripe for determination. For the reasons set forth in detail below, the Court

---

[1] Defendants AXA Advisors, LLC, AXA Equitable Life Insurance Company, f/k/a The Equitable Life Assurance Society of the United States, and Pershing, LLC (the "AXA Defendants") filed their Motion to Dismiss for Failure to State a Claim on March 21, 2005. Defendants Raymond James & Associates, Inc. and Wilbanks Securities, Inc. subsequently filed separate motions adopting the AXA Defendants' brief in its entirety. Defendants Marsha and Richard Schubert have not responded to Plaintiff's Petition.

finds that SLUSA completely preempts Plaintiff's putative class action. It follows that Defendants properly removed the action to federal court, and that the action must now be dismissed.

I.    <u>Background</u>

Plaintiff filed this action in the District Court of Kingfisher County, State of Oklahoma, on behalf of "[a]ll persons or entities . . . who are or were investors/clients of Defendants during the relevant time period." Petition at ¶ 35. The action is founded on the following "allegations common to all counts":

> 11. Defendant Marsha Schubert, an individual and d/b/a Schubert & Associates ("Marsha Schubert"), began a scheme without responsible oversight of her by Defendants AXA Advisors, LLC ("AXA"), The Equitable Life Assurance Society of the U.S. ("AXA Equitable"), Pershing, LLC ("Pershing"), Raymond, James & Associates, Inc. ("Raymond James"), and/or Wilbanks Securities, Inc. ("Wilbanks") [collectively referred to as the "Broker-Dealer(s)" and/or "Defendant Broker-Dealer(s)"][2] that ultimately caused hundreds of Plaintiff investors to lose significant amounts of money and/or their life savings.
>
> 12. Marsha Schubert was licensed as a securities registered representative with the Broker-Dealers . . . .
>
> 13. During the [relevant][3] time periods . . ., Marsha Schubert was an employee and disclosed agent of the Broker-Dealers.
>
>    .    .    .    .
>
> 15. Marsha Schubert solicited and verbally promised investors large profits in connection with her investing investors' funds into certain investments including, but not limited to, alleged option accounts and day trading accounts that would generate large financial returns . . . .
>
>    .    .    .    .
>
> 18. Moreover, Marsha Schubert induced a constant stream of investments by misrepresenting the Broker-Dealers' performance and gave the appearance

---

[2]    Alteration in original.

[3]    Alteration made by the Court.

        of success by using the funds from new investments to pay fictitious profits to earlier investors.

19. Marsha Schubert directed the investors to deposit/transfer their investment monies into the Broker-Dealers' accounts held, managed, and controlled by the Broker-Dealers.

        .    .    .    .

24. Based upon the recommendations made by Defendants, Plaintiff and Investor Class transferred and/or deposited money with the Defendants based on Defendants' superior knowledge in the profession of investing and financial planning.

25. Marsha Schubert, and Richard Schubert in conjunction with Marsha Schubert, then deposited the funds into various Defendant Broker-Dealers' accounts, and also in those bank accounts held in the name of Schubert & Associates and/or other personal accounts of Marsha Schubert and Richard Schubert.

26. Marsha Schubert made verbal statements to the investors that their money would be used to make trades in alleged options accounts and day trading accounts. Marsha Schubert further stated to Mr. Schnorr and the Investor Class that their accounts with the Broker-Dealers held large balances.

27. However, according to statements by Marsha Schubert, after termination of the Ponzi Scheme, Mr. Schnorr's investment monies were never used to make any investment trades through the Broker-Dealers on his behalf and on behalf of the Investor Class, though Marsha Schubert had continually made statements to Plaintiff and the Investor Class to the contrary.

28. Marsha Schubert's untrue statements to the Plaintiff and the Investor Class caused Plaintiff and the Investor Class to lose significant amounts of money and, in some cases, lose the investor's entire life savings.

        .    .    .    .

32. Marsha Schubert d/b/a Schubert & Associates made no investments of any kind on behalf of anyone, but instead deposited funds from anyone the Crescent office could convince to "invest" in the non-existent trading accounts into various checking accounts and wrote checks out to the extent necessary to preserve and promote the Ponzi scheme. Marsha Schubert, as an individual and/or d/b/a Schubert & Associates, continued an ongoing practice of embezzlement and other tortious acts that the Broker-Dealers

continually allowed to operate starting on or about the year 2000 through October 2004, which involved hundreds of wrongful events.

Petition at ¶¶ 11-13, 15, 18, 19, 24-28, 32.  Based on these allegations, Plaintiff asserts nine claims for relief: (1) Ponzi scheme; (2) "controlling person liability" under Okla. Stat. tit. 71, § 1-509; (3) embezzlement; (4) agency; (5) negligent supervision/respondeat superior; (6) breach of fiduciary duty; (7) constructive fraud; (8) restitution; and (9) civil conspiracy.  Plaintiff seeks compensatory and punitive damages, litigation costs and fees.

Claiming Plaintiff's action is completely preempted by SLUSA, Defendants removed the action to federal court pursuant to 28 U.S.C. §§ 1331,[4] 1367,[5] 1441,[6] and 1446.[7]  Defendants now move the Court to dismiss Plaintiff's action pursuant to SLUSA.  Plaintiff, who maintains that the factual allegations in his Petition do not implicate SLUSA, moves the Court to remand the action to state court.

---

[4]  Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

[5]  Section 1367 provides, in relevant part: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

[6]  Section 1441 provides, in relevant part: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

[7]  Section 1446 sets forth the procedural requirements for effecting the removal of an action from state court.  28 U.S.C. § 1446(a), (b).

II. Discussion

    A. Preemption Standard of Review

Under the federal removal statute, the defendant in any civil action commenced in state court may remove such action to federal district court provided that the federal courts possess original jurisdiction thereof. 28 U.S.C. § 1441(a). Where, as here, the parties to an action are not completely diverse in their citizenship, federal jurisdiction exists only if the action raises a federal question, which is to say that the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996).

When deciding whether a plaintiff's claims arise under federal law, courts are "guided generally by the 'well-pleaded complaint' rule, under which a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Schmeling*, 97 F.3d at 1339 (quoting *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). Under the well-pleaded complaint rule, the plaintiff is recognized as the "'master of the claim' and may prevent removal by choosing not to plead a federal claim even if one is available." *Id.*

There are, however, exceptions to the well-pleaded complaint rule. For example, the "artful pleading" doctrine precludes a plaintiff from defeating removal "by failing to plead federal questions that are essential elements of the plaintiff's claim." *Id.* Also, a defendant may properly remove an action in which the plaintiff's "right to relief requires resolution of a substantial question of federal law." *Id.* A third exception, and the most important one for present purposes, is the "complete preemption" doctrine. Under the complete preemption doctrine, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*,

481 U.S. 58, 63-64 (1987)). The doctrine applies when "a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Id.* at 1342.

The parties to this action agree that SLUSA completely preempts all "covered class actions" that meet the statutory requirements. *See* 15 U.S.C. § 77p(b). The parties disagree as to whether Plaintiff's action constitutes such a "covered class action."

B. <u>SLUSA Preemption</u>

SLUSA completely preempts, *inter alia*, "covered class action[s] based upon the statutory or common law of any State or subdivision thereof . . . [brought] by any private party alleging– (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). The statute provides that all such covered class actions "shall be removable" to federal court and, once removed, the actions are subject to immediate dismissal. 15 U.S.C. § 78bb(f)(2); *see also, e.g., Behlen v. Merrill Lynch*, 311 F.3d 1087, 1092 (11th Cir. 2002). A defendant seeking to remove and ultimately dismiss an action on the ground of SLUSA preemption must demonstrate that: (1) the action is a "covered class action"; (2) the action is based on state or local law; (3) the action involves one or more "covered securities"; and (4) the defendant is alleged to have misrepresented or omitted a material fact (5) "in connection with" the purchase or sale of one or more covered securities. *See Dabit v. Merrill Lynch*, 395 F.3d 25, 33 (2d Cir. 2005), *petition for cert. filed*, 73 U.S.L.W. 3632 (U.S. Apr. 11, 2005) (No. 04-1371).

Plaintiff contends his factual allegations do not implicate SLUSA. His contention, however, is premised exclusively on the fifth condition to preemption. In other words, Plaintiff implicitly (by

omission) concedes that his action is a "covered class action"[8] based on state or local law,[9] which involves both misrepresentations or omissions[10] *and* "covered securities."[11] He denies only that the

---

[8] SLUSA defines the term "covered class action" as "any single lawsuit in which . . . (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. § 77p(f)(2)(A)(i)(II). Here, Plaintiff seeks to recover damages on behalf of himself and "all other similarly situated persons." Preamble to Petition at 1; *see also, e.g.,* Petition at ¶¶ 35-39. Further, Plaintiff asserts that "questions of law and fact in this case are common to the Investor Class," Petition at ¶ 41, and that such questions "predominate over questions affecting only individual members." *Id.* at ¶ 42. Based on SLUSA's definition of the term, this action undoubtedly qualifies as a "covered class action."

[9] All claims asserted in Plaintiff's Petition ((1) Ponzi scheme; (2) "controlling person liability" under Okla. Stat. tit. 71, § 1-509; (3) embezzlement; (4) agency; (5) negligent supervision/respondeat superior; (6) breach of fiduciary duty; (7) constructive fraud; (8) restitution; and (9) civil conspiracy) arise under Oklahoma statutory or common law. As such, the second condition to preemption is satisfied.

[10] Plaintiff's action is predicated on Marsha Schubert's alleged misrepresentations and omissions. Plaintiff alleges that Ms. Schubert falsely represented to him and the putative class that she was investing their money in securities, including options and day trading accounts, Petition at ¶ 26, when in fact she misappropriated their money, converting it for her personal use and for purposes of perpetuating a fraudulent Ponzi scheme. *Id.* at ¶¶ 25, 32. Clearly, then, the fourth condition to preemption is satisfied.

[11] SLUSA defines the term "covered security" as "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this subchapter pursuant to rules issued by the Commission under section 77d(2) of this title." 15 U.S.C. § 77p(f)(3). Paragraph (1) of section 77r(b) defines "covered security" as follows: "A security is a covered security if such security is–(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities); (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or (C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B)." 15 U.S.C. § 77r(b)(1). Paragraph (2) of section 77r(b) defines "covered security" as follows: "A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2).

misrepresentations or omissions at issue here were "in connection with" the purchase or sale of covered securities.

SLUSA does not define the phrase "in connection with the purchase or sale of a covered security." Every federal court of appeals that has considered the issue, however, has interpreted the phrase consistently with the meaning ascribed to the substantially similar phrase in Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5,[12] which is based on § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j.[13] *See Kircher v. Putnam Funds Trust*, 403 F.3d 478, 482 (7th Cir. 2005) (collecting federal courts of appeals cases); *see also Dabit*, 395 F.3d at 35 & n.7 (collecting both federal courts of appeals and federal district court cases).

The Supreme Court has explained that the 1934 Act should be construed broadly, "not technically and restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (internal quotation omitted). The phrase "in connection with the purchase or sale of any security," which derives from § 10(b) of the 1934 Act, is no exception. *Id.* at 819-20.

---

Plaintiff alleges that Ms. Schubert was licensed as "a securities registered representative," Petition at ¶ 12, and that she falsely represented to Plaintiff and the putative class that she was investing their money in "certain investments including, but not limited to, alleged option accounts and day trading accounts that would generate large financial returns." *Id.* at ¶ 15. The Court infers from these allegations that Ms. Schubert's purported misrepresentations and omissions involved nationally listed and traded securities. This inference, coupled with Plaintiff's concession that Ms. Schubert's misrepresentations and omissions involved "covered securities," compels the conclusion that the third condition to preemption is satisfied.

[12]     Rule 10b-5 provides that it shall be unlawful, *inter alia*, "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale of any security*." 17 C.F.R. § 240.10b-5(c) (emphasis added).

[13]     Section 10(b) provides, in relevant part: "It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . . ." 15 U.S.C. § 78j(b).

In *Zandford*, the Court adopted the Securities and Exchange Commission's ("SEC") "broad reading of the phrase," *id.* at 819-20, but clarified that "the statute must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)." *Id.* at 820. Ultimately, the Court held that the requisite "connection" is established where a "fraudulent scheme" and a securities transaction "coincide." *Id.* at 825; *see Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) (citing *Zandford*, 535 U.S. at 825).

Consistent with his allegation that Ms. Schubert promised to invest Plaintiff's and the putative class's money in covered securities but never did, Plaintiff argues that the "in connection with" condition to SLUSA preemption is satisfied only in the case of "an actual purchase or sale of securities." Pl.'s Mot. to Remand at 4; Pl.'s Resp. to Defs.' Mots. to Dismiss at 5-6. He further argues that SLUSA does not apply "when the claim is that the broker failed to carry out a promise to sell securities." Pl.'s Mot. to Remand at 5; Pl.'s Resp. to Defs.' Mots. to Dismiss at 5. With respect to the former argument, Plaintiff is only partially correct. With respect to the latter, Plaintiff is simply mistaken.

In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), the Supreme Court adopted the *Birnbaum* rule, established by the Second Circuit in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952). In brief, the rule limits "the plaintiff class for purposes of a private damage action under § 10(b) and Rule 10b-5 . . . to actual purchasers and sellers of securities." *Blue Chip Stamps*, 421 U.S. at 730. Thus, Plaintiff is correct that the Supreme Court has adopted an actual-purchase-or-sale requirement for purposes of triggering a private right of action under the 1934 Act. He is likewise correct that this requirement applies in the context of SLUSA preemption. *See Dabit*, 395 F.3d at 43-44. Plaintiff, however, ignores a critical exception (discussed below) to the actual-purchase-or-sale requirement. In this sense, Plaintiff is only partially correct in arguing that an

9

"actual purchase or sale of securities" is necessary to satisfy the "in connection with" condition to SLUSA preemption.

When the Supreme Court adopted the SEC's "broad reading" of the phrase "in connection with the purchase or sale of any security" in *Zandford*, it also adopted the SEC's position that "a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds," has acted "in connection with the purchase or sale of any security." *Zandford*, 535 U.S. at 819-20; *see Grippo v. Perazzo*, 357 F.3d 1218, 1223 (11th Cir. 2004). The Eleventh Circuit, in reliance on that broad interpretation, has held that a plaintiff "adequately pled fraud '*in connection with the purchase or sale of any security*'" by alleging the defendants "engaged in a[ ] . . . fraudulent scheme involving an investment contract . . . and *at least purported* to buy and sell other securities." *Grippo*, 357 F.3d at 1223-24 (emphasis added) (construing the phrase "in connection with the offer, sale, or purchase of any investment or security" in the context of a state statute, but nevertheless employing the Supreme Court's § 10(b) and Rule 10b-5 jurisprudence). The court made clear that under the Supreme Court's interpretation of the phrase "in connection with the purchase or sale of any security," a plaintiff need only allege that money changed hands in connection with a *contract* for the purchase or sale of securities; no actual purchase or sale of securities need be alleged. *Id.*

Not surprisingly, the broad interpretation adopted by the Supreme Court in *Zandford* is compatible with the 1934 Act's definitions of "purchase" and "sale." The 1934 Act defines the term "purchase" to include "any contract to buy, purchase, or otherwise acquire," 15 U.S.C. § 78c(a)(13), and defines the term "sale" to include "any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a)(14). In *Blue Chip Stamps*, the Supreme Court, citing these definitions, said that "the holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been

10

recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5 . . . because the definitional provisions of the 1934 Act themselves grant them such a status." 421 U.S. at 751. The Ninth Circuit, in reliance on the 1934 Act's definitions of "purchase" and "sale," and citing *Blue Chip Stamps*, has held that "the granting of an option [to purchase securities] constitutes a 'purchase or sale' under SLUSA." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002), *opinion amended by* 320 F.3d 905 (9th Cir. 2003). As the court explained, the fact that the option is never exercised, and that no purchase or sale of securities is consummated, is irrelevant. *Id.* at 1129.

Finally, it should be noted that the exception to the actual-purchase-or-sale requirement – through which *unfulfilled* promises to purchase securities qualify as *actual* purchases, so long as the defrauded party *actually* pays for what he or she is misled to believe are securities or the right to purchase securities – is wholly consistent with the Supreme Court's reasoning for adopting the actual-purchase-or-sale requirement. In *Blue Chip Stamps*, the Supreme Court adopted the *Birnbaum* rule based on two primary concerns: first, the Court feared that frivolous or vexatious suits would become commonplace if plaintiffs could state a claim for relief under Section 10(b) and Rule 10b-5 merely by alleging that they *would have* purchased or sold securities but for the misrepresentations or omissions of others; second, the Court was concerned about the proof problems that arise when the sole basis for a damages action is a plaintiff's subjective representation regarding what he or she would have done at a given time. *Blue Chip Stamps*, 421 U.S. at 739-47; *see Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 595 (2001) (explaining that the Court adopted the *Birnbaum* rule based on its "concern . . . about 'the abuse potential and proof problems inherent in suits by investors who neither bought nor sold, but asserted they would have traded absent fraudulent conduct by others.'") (quoting *United States v. O'Hagan*, 521 U.S. 642, 664 (1997)); *Butterworth v. Integrated Res. Equity Corp.*, 680 F. Supp. 784, 786 (E.D. Va. 1988) (same).

These concerns are not warranted where, as here, the defrauded party *actually* purchases what are believed to be either securities or the right to purchase securities. The defrauded party's intentions are capable of objective verification, through evidence that the purchase was made, and no proof problems arise because the defrauded party's claims can be supported with admissible evidence that a purchase was made and that the defendant failed to execute the promised-for "actual" purchase of securities. *See Butterworth*, 680 F. Supp. at 786.

Having determined that an exception to the actual-purchase-or-sale requirement exists, the Court now considers whether the exception applies under the facts of this case. Plaintiff alleges that Ms. Schubert "verbally promised investors large profits in connection with her investing investors' funds into certain investments including, but not limited to, alleged option accounts and day trading accounts that would generate large financial returns," Petition at ¶ 15, that "[b]ased upon the recommendations made by Defendants, Plaintiff and Investor Class transferred and/or deposited money with the Defendants based on Defendants' superior knowledge in the profession of investing and financial planning," *id.* at ¶ 24, and that "investment monies were never used to make any investment trades through the Broker-Dealers on his behalf and on behalf of the Investor Class, though Marsha Schubert had continually made statements to Plaintiff and the Investor Class to the contrary." *Id.* at ¶ 27. Based on these allegations, which the Court accepts as true for purposes of this order, *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (holding that all well-pleaded facts must be taken as true when ruling on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6)), the Court finds the exception to the actual-purchase-or-sale requirement applies in this case. The allegations establish that Plaintiff and the putative class, in reliance on Ms. Schubert's misrepresentations, *actually* purchased what they believed were either covered securities or options to purchase covered securities, but that Ms. Schubert never consummated any such purchases on

their behalf. The Court finds these allegations place this case squarely within the exception explained by the Supreme Court in *Zandford*, 535 U.S. at 819-20 (adopting view that "a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds," has acted "in connection with the purchase or sale of any security"), contemplated by Congress through its definition of the term "purchase" in the 1934 Act, 15 U.S.C. § 78c(a)(13) (defining the term "purchase" to include "any contract to buy, purchase, or otherwise acquire"), and applied by the Eleventh and Ninth Circuits in *Grippo*, 357 F.3d at 1223-24 (holding that plaintiff "adequately pled fraud 'in connection with the purchase or sale of any security,' even though he failed to identify any particular security purchased, because [the defendant] accepted and deposited [the plaintiff's] monies as payment for securities"), and *Falkowski*, 309 F.3d at 1130 (holding that "the granting of an option [to purchase securities] constitutes a 'purchase or sale' under SLUSA"), respectively.

Moreover, the Court finds the purchase of covered securities or options to purchase covered securities in this action "coincided" with Ms. Schubert's allegedly fraudulent conduct. *See Zandford*, 535 U.S. at 825. Plaintiff alleges that Ms. Schubert's misrepresentations regarding her intention to purchase (with Plaintiff's and the putative class's money) covered securities and options to purchase covered securities directly contributed to his and the putative class's investing. Petition at ¶ 24. The Court finds this allegation establishes the requisite "connection" between the alleged purchase of securities and Ms. Schubert's fraudulent scheme for purposes of satisfying the fifth condition to SLUSA preemption.

Because all five conditions to SLUSA preemption have been satisfied in the instant action, the Court finds that Defendants properly removed the action from state court pursuant to 15 U.S.C. § 78bb(f)(2), and further finds, pursuant to 15 U.S.C. § 78bb(f)(1)(A), that this action, each

component claim of which incorporates Plaintiff's putative class action allegations, must be dismissed in its entirety. *See Rowinski*, 398 F.3d at 305 (declining to find that SLUSA preempted individual counts of a complaint, and instead finding that SLUSA preempted the entire "action," where the plaintiff incorporated his class action allegations in each count of his complaint).

III.   Conclusion

Accordingly, for all of the above stated reasons, the Court finds that Plaintiff's putative class action is completely preempted by SLUSA, that Defendants properly removed the action to federal court, and that SLUSA requires that the action now be dismissed in its entirety. Plaintiff's Motion to Remand [docket no. 26] is therefore DENIED. Defendants' Motions to Dismiss [docket nos. 7, 11, and 24] are GRANTED. Plaintiff's Petition, attached as an exhibit to Defendants' Notice of Removal [docket no. 1], is DISMISSED without prejudice.[14] All remaining motions are DENIED as moot.

**IT IS SO ORDERED this 18th day of August, 2005.**

*[signature]*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[14] Plaintiff is not precluded from filing an individual action based on state law or a class action based on federal law. *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 385 (E.D.N.Y. 2002). SLUSA bars only class actions based exclusively on state or local law.